## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CLIFTON L. CLAY**                                      **CIVIL ACTION**

**VERSUS**                                              **NO.  12-1361**

**PHILLIP HERBERT**                                      **SECTION "B"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. I previously issued a Report and Recommendation recommending that Clifton Clay's 28 U.S.C. § 2254 petition for habeas corpus relief be dismissed for failure to exhaust state court remedies. Record Doc. No. 8. In his objections to that report and recommendation, Clay requested that the unexhausted issues be dismissed. Record Doc. No. 9. The presiding district judge dismissed the unexhausted issues and referred the matter to me for consideration of the substance of the remaining issues. Record Doc. No. 10. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that

the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Clifton L. Clay, is currently incarcerated in the St. John the Baptist Parish Jail in Laplace, Louisiana.[2]  Clay was charged by bill of information in Lafourche Parish on April 2, 2007, with possession with intent to distribute cocaine and MDMA a/k/a "Ecstasy."[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On June 28, 2006, Lafourche Parish Drug Task Force agents used Audrey Cheramie (Cheramie) (CI), a confidential informant[4] (CI), to attempt to purchase cocaine from Tyeine Jones at a two-story house on 160th Street in Galliano, which was being rented by Samantha Merrill (Merrill).  Based on the CI's transaction, as well as anonymous calls to the police about illegal drug activities at the Galliano house, Agent Robert Mason, with the Lafourche Parish Sheriff's Office, secured a search warrant to search the house for narcotics.
> On July 7, 2006, Drug Task Force agents executed the search warrant at the Galliano house. Therein, agents found the defendant and Merrill in a downstairs bedroom and Kelly Campbell, the defendant's brother, in an upstairs bedroom.  The three occupants were secured in the downstairs living room, where they were <u>Mirandized</u> as a group by Agent Mason. A K-9 unit brought into the house alerted on a chest of drawers in the bedroom where the defendant and

---

was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 4/2/07 (as amended 2/11/08).

[4]Spelled "inform ant" in original.

Merrill had been sleeping. In the top drawer, Agent Mason found a brown paper bag containing four wrapped "cookies" of crack cocaine and an Advil bottle, which contained twelve tablets of MDMA. In a cabinet drawer in the kitchen, Lieutenant Chet Caillouet, with the Lafourche Parish Sheriff's Office, found a razor blade and a digital scale inside a Ziploc box of sandwich bags.

Lieutenant Josh Champagne, with the Lafourche Parish Sheriff's Office and the Drug Enforcement Administration, testified at trial that he <u>Mirandized</u> the defendant and questioned him about the drugs found in the room. The defendant told Lieutenant Champagne that the drugs were his and that his brother and girlfriend had nothing to do with the drugs. Agent Mason heard the defendant's admission to Lieutenant Champagne. The defendant also told Lieutenant Champagne that the drugs came from Houma.

Campbell testified at trial. According to his testimony, the defendant lived in Houma with his mother. On the day before the execution of the search warrant, Campbell, along with the defendant, was driving back from Florida, where Campbell worked. While on their way back to Houma, the defendant received a call from his friend, Merrill, who invited the defendant to come to her house in Galliano. Campbell and the defendant agreed to spend the night at Merrill's house instead of driving straight through to Houma. The defendant did not bring any drugs with him, and there were no drugs in Campbell's car. When they arrived at Merrill's house, it was the first time Campbell had met Merrill and, according to Campbell, as far as he knew, it was the first time the defendant had ever been to Merrill's house. However, Cheramie testified at trial that Merrill was the defendant's girlfriend, and she (Cheramie) had seen them hanging out a few times.

<u>State v. Clay</u>, 56 So.3d 463 (La. App. 1st Cir. 2010) (Table); (footnote added) <u>State v. Clay</u>, No. 2010-0450, 2010 WL 4272986, at *1-*2 (La. App. 1st Cir. Oct. 29, 2010); State Record Volume 6 of 6, Louisiana App. 1st Cir. Opinion, 2010-KA-0450, October 29, 2010.

Clay was tried before a jury on September 28, 29 and 30, 2009, and was found guilty of the lesser included offenses of attempted possession with intent to distribute

cocaine (count one) and attempted possession of MDMA (count two).[5]  At a hearing on

October 15, 2009, the state trial court denied Clay's motion for post-verdict judgment of

acquittal, which was based on insufficient evidence to support the verdicts.[6]  The court

then sentenced Clay to serve eight (8) years in prison for count one and two (2) years in

prison for count two, to run concurrently and with credit for time served.[7]

On direct appeal to the Louisiana First Circuit, Clay asserted the following

grounds for relief:[8] (1) The trial court erred in denying his motion to quash the search

warrant and/or suppress the evidence. (2) The trial court erred in denying his motion for

post-verdict judgment of acquittal based on insufficient evidence. (3) The evidence was

insufficient to support the verdicts.  The appellate court affirmed the convictions on

October 29, 2010, finding no merit in the claims.[9]  In its errors patent review, the court

---

[5]State v. Clay, 2010 WL 4272986, *1 (La. App. 1st Cir. Oct. 29, 2010); St. Rec. Vol. 6 of 6, Trial Minutes (3 pages), 9/30/09; Trial Transcript, 9/30/09 (the transcript is erroneously dated "September 30, 2010"); St. Rec. Vol. 3 of 6, Trial Transcript, 9/28/09; Trial Transcript (Jury Question), 9/30/09; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 9/28/09; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 9/28/09; Trial Transcript, 9/29/09 (erroneously dated "September 29, 2010").

[6]St. Rec. Vol. 6 of 6, Sentencing Minutes, 10/15/09; St. Rec. Vol. 3 of 6, Sentencing Transcript, 10/15/09.

[7]Id.

[8]State v. Clay, 2010 WL 4272986, at *2, *8; St. Rec. Vol. 6 of 6, 1st Cir. Opinion, p. 20, 2010-KA-0450, pp. 4, 14, 10/29/10.

[9]State v. Clay, 56 So.3d at 463; State v. Clay, 2010 WL 4272986, at *12; St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2010-KA-0450, p. 20, 10/29/10.

4

also amended Clay's sentences to be served at hard labor and affirmed the sentences as amended.

Clay's conviction became final 30 days later, on Monday, November 29, 2010, because he did not seek rehearing or file for review in the Louisiana Supreme Court. Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

On January 25, 2011, Clay submitted an application for post-conviction relief to the state trial court asserting the following grounds for relief:[10] (1) The conviction was obtained in violation of the Due Process Clause because there was insufficient evidence of an attempt. (2) The state trial court erred in denying his motion for post-verdict judgment of acquittal based on insufficiency of the evidence. (3) His rights to challenge the amount of evidence seized were denied because the chain of evidence was broken and he could not confront or cross-examine the original evidence custodian. (4) The state

---

[10]St. Rec. Vol. 6 of 6, Application for Post-Conviction Relief, 2/3/11 (dated 1/25/11); Trial Court Order 2/22/01.

court admitted the Kel[11] tape in violation of open file discovery and in violation of Brady,[12] which denied him a fair trial.

The state trial court denied the application on February 22, 2011.[13]  The court found that the first and second claims were repetitive of matters addressed on direct appeal, which were res judicata.  Noting that the third claim was not raised on appeal, the court held that there was sufficient evidence to show that the seized narcotics were the same as those tested and presented at trial.  The court denied the fourth claim as meritless, because the defense was aware of the tapes during pretrial motions, and to whatever extent the tapes contained Brady information, the jury heard the exculpatory evidence when the tapes were played at trial.

---

[11]This is a reference to audio recording equipment used by undercover officers to transmit and record verbal communications among officers involved in an operation. State v. Lewis, 800 So.2d 1077, 1079 (La. App. 4th Cir. 2001).

[12]In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[13]St. Rec. Vol. 6 of 6, Trial Court Order, 2/22/11.

Clay sought review of that order in the Louisiana First Circuit, and his application was denied on July 5, 2011, without reasons.[14] The Louisiana Supreme Court also denied Clay's related writ application without stated reasons on April 20, 2012.[15]

## II.   FEDERAL HABEAS PETITION

On May 29, 2012, the clerk of this court filed Clay's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[16] (1) The evidence was insufficient as to the issue of attempt. (2) The state trial court erred in denying his motion for post-verdict judgment of acquittal based on insufficient evidence to prove an attempt. (3) He was denied a fair trial based on the State's failure to establish a chain of custody for the seized drugs. (4) The admission of the Kel tape was a violation of open file discovery and Brady. (5) He received ineffective assistance of counsel because his lawyer failed to make the motions necessary to preserve these matters for appeal and because he was denied due process when he received an eight (8) year prison sentence for a crime he did not commit.

---

[14]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2011-KW-0514, 7/5/11.  The State failed to provide a copy of this writ application.  An unfiled copy dated March 7, 2011, is attached to Clay's petition.  Rec. Doc. No. 1, p. 43.

[15]State ex rel. Clay v. State, 85 So.3d 1259 (La. 2012); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KH-1638, 4/20/12; La. S. Ct. Letter, 2011-KH-1638, 7/21/12 (showing postal meter of 7/19/11). The State failed to provide a copy of this writ application.

[16]Rec. Doc. No. 1, p.5, 7, 8, 10, and 14.

7

The State filed an answer and memorandum in opposition to Clay's petition conceding the timeliness of the petition.[17] Addressing only the first four claims listed above, the State argued that Clay failed to demonstrate his entitlement to federal habeas corpus relief, because the issues had been denied by the state courts.[18] As discussed above, the unexhausted ineffective assistance of counsel claim has been already dismissed by the presiding district judge, leaving only the first four claims for review.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") went into effect on April 24, 1996[19] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Clay's petition, which, for reasons discussed below, is deemed filed in this federal court on May 21, 2012.[20]

─────────────

[17]Rec. Doc. No. 7.

[18]<u>Id</u>., p. 5.

[19]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[20]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Clay's petition was filed by the clerk of this court on May 29, 2012, when the filing fee was received.  Clay's signature

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Clay's federal petition was timely filed.  Clay's exhaustion after voluntary dismissal of his unexhausted claims has already been addressed by the court.

In its opposition, the State did not address the defense of procedural default.  The record reflects, however, that on post-conviction review, the state trial court refused to consider Clay's first two claims because they had been addressed on direct appeal. Under Louisiana law, La. Code Crim. P. art. 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994).  This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and need not be considered again on post-conviction application.  Id.

---

on the petition was dated May 21, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

In this case, Clay did not fully litigate his first two claims before raising them on post-conviction review, since Clay did not seek review of his direct appeal in the Louisiana Supreme Court.  Although he asserted the claims in the Louisiana Supreme Court during his post-conviction proceedings, he did not do so in a procedurally proper manner, since by that time the claims had been barred from further review by the lower state courts under La. Code Crim. P. art. 930.4.

In addressing Clay's third claim during his post-conviction proceedings, the state trial court obliquely wrote that "this Court would assert that issue was not raised on appeal . . ."[21]  The court then held that there was sufficient evidence at trial to establish that the drug evidence was the same that had been seized and tested.  The first part of the court's vague comment may have been a reference to La. Code Crim. P. art. 930.4(B), which precludes post-conviction review if the claim could have been but was not raised on direct appeal.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999)  Procedural default, however, does not bar federal court review of a federal claim raised in a habeas petition, unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal

---

[21]St. Rec. Vol. 6 of 6, Trial Court Order, 2/21/11.

law and rests on a state procedural bar.  <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997).

In this case, I do not find that the state trial court <u>clearly</u> relied on the Article 930.4(B) bar to review in connection with Clay's <u>third</u> claim.  The court's vague comment that the claim had not been raised on appeal, without more, was not a clear and express reliance on a procedural bar.  My finding is based in part on the ambiguity of the state trial court when compared to the court's specific, detailed and direct reliance on Article 930.4(A) in connection with Clay's first two post-conviction issues.  The state trial court left no doubt that it was relying on the procedural rule to bar review of those two claims.  On the other hand, the state trial court merely distinguished the third claim from the first two claims, then proceeded to address the merits.

A federal habeas court's decision to raise a procedural default sua sponte is discretionary.  <u>Magouirk v. Phillips</u>, 144 F.3d 348, 358 (5th Cir. 1998).  Since the State has not asserted procedural default, and because I have determined that Clay's claims are clearly without merit, I will address the merits of Clay's claim without considering procedural default.  As outlined above, I will consider only the first four claims, because the two arguments raised in the fifth claim were not exhausted and already have been dismissed.

11

IV.     STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.     SUFFICIENCY OF THE EVIDENCE AND DENIAL OF THE POST-VERDICT MOTION (CLAIM NOS. ONE AND TWO)

Clay argues that the prosecution failed to present any evidence of an attempt from which the jury could have drawn an inference in support of the verdicts that he attempted to possess narcotics.  He contends that the jury's verdict represents an impermissible compromise verdict with no evidentiary support.  He also argues that the state trial court erred in denying his post-verdict motion based on these same grounds.

In considering Clay's similar arguments on direct appeal, the Louisiana First Circuit found the claim meritless under the standards established in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law.  The court also noted that Clay did not object to the inclusion of the lesser offense of attempt, which was a legislatively approved responsive verdict available to the jury, and his failure to do so waived this challenge. The court found that, considering the evidence in the light most favorable to the verdict and every reasonable hypothesis of innocence,[22] there was sufficient evidence for the jury

---

[22]In Louisiana, "[t]he rule as to circumstantial evidence is:  assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).  Louisiana's circumstantial evidence rule "is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . .  Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); State v. Williams, 693 So. 2d at 208.  On federal habeas corpus review, the court does not apply these state law "reasonable hypothesis" standards, but must apply the federal standard announced in Jackson in a manner consistent with the AEDPA

to have reached the verdict and no error in denial of the motion. Clay did not seek review of the appellate court decision in the Louisiana Supreme Court, and his post-conviction writ application was denied by the state courts on procedural grounds.

Clay's argument that the state trial court improperly denied his motion for post-verdict judgment of acquittal under state law does not warrant federal habeas corpus relief.  See Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).  Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B).  Such a motion raises the question of sufficiency of the evidence and is therefore considered under a standard virtually identical to that applicable to appellate review of claims of insufficient evidence under Jackson.  State v. Jones, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing State v. Thibodeaux, 750 So.2d 916, 926 (La. 1999); State v. Williams, 891 So.2d 26, 30 (La. App. 4th Cir. 2004) (citing State v. Brown, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993).  In Louisiana, review of a trial court's denial of a motion for post-verdict judgment of acquittal also is controlled by the standards set forth in Jackson.  State v.

_____

standard of review. Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).

Durand, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007).  This court's review of Clay's sufficiency of the evidence claim must also be considered under Jackson.

Under Jackson, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th

16

Cir. 1993); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).  Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.  <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).  In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent as outlined in <u>Jackson</u>.

Clay was convicted of attempted possession with intent to distribute cocaine and attempted possession of MDMA in violation of La. Rev. Stat. Ann. §§ 40:967(A), 966(C) and § 14:27.  To establish possession of a controlled dangerous substance, such as

17

cocaine, with intent to distribute, the State must prove that "the defendant knowingly and intentionally possessed the drug, and that he did so with the intent to distribute it."  State v. Henry, 27 So.3d 935, 942 (La. App. 5th Cir. 2009).  Intent to distribute a controlled substance may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of the intent to distribute.  State v. Bobo, 77 So.3d 1, 5 (La. App. 2d Cir. 2011) (citations omitted).  The possession of a narcotic, such as cocaine or ecstasy, can be established by actual physical possession or by constructive possession of the narcotic.  State v. Major, 888 So.2d 798, 802 (La. 2004).

Clay was found guilty of attempted possession of cocaine with intent to distribute and the attempted possession of MDMA.  Louisiana defines an "attempt" for criminal statute purposes as follows:

A.      Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

B.      Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

C.      An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it

> appears on the trial that the crime intended or attempted was actually
> perpetrated by such person in pursuance of such attempt.

La. Rev. Stat. Ann. § 14:27.

Clay challenges whether the State proved that he attempted to possess the cocaine

with the intent to distribute and attempted to possess the MDMA.

> To prove an attempt to possess, "the State must prove that the defendant
> committed an act tending directly toward the accomplishment of his intent,
> i.e., possession of the drug." State v. Ruffin, 96-226, p.5 (La. App. 5 Cir.
> 8/28/96), 680 So.2d 85, 87 (citations omitted). To support an attempted
> possession conviction, the State need only establish constructive
> possession, rather than actual or attempted actual possession. Id.

State v. Washington, 90 So.3d 1157, 1162 (5th Cir. 2012).

A person can be found in constructive possession of a controlled substance if the

State establishes that he had dominion and control over the narcotics, even in the absence

of physical possession. State v. Major, 888 So.2d at 802. Although mere presence in an

area where drugs are located does not constitute constructive possession, Louisiana

courts consider several factors in determining whether a defendant exercised sufficient

control and dominion to establish constructive possession. These factors include: (1) his

knowledge that drugs were in the area; (2) his relationship with the person, if any, found

to be in actual possession; (3) his access to the area where the drugs were found; (4)

evidence of recent drug consumption; (5) his physical proximity to drugs. Id. at 802.

Guilty knowledge can be established by showing awareness of illegal drugs in one's

actual or constructive possession.  State v. Carter, 981 So.2d 734 (La. App. 3d Cir. 2008); State v. Lathers, 868 So.2d 881 (La. App. 5th Cir. 2004).

Although not specifically argued here, Clay based his challenge in the state courts on his assertion that the State failed to present evidence that he knew the location of the drugs or that he actually made an effort to take possession of the drugs, leaving no evidence of an act or omission towards accomplishing possession of the drugs.

The evidence at trial established that, upon execution of the search warrant on Samantha Merrill's home, the officers found Clay and Merrill, his girlfriend, getting out of bed in the downstairs bedroom.[23]  The narcotics were found in a drawer in the bedroom dresser on the same side of the room where Clay was discovered getting out of bed.[24]  A K-9 unit searched the bedroom and the police dog triggered on a dresser drawer in which officers located a rolled-up brown paper bag.[25]  The dresser drawer was within arm's reach, about 3 to 5 feet from the side of the bed on which Clay was found.[26]  Inside the paper bag were three or four plastic baggies containing cookies or large chunks of suspected cocaine and a small Advil cylinder tube which contained 12 tablets of

---

[23]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 44-45, 46-47 (Agent Robert Mason), 9/29/09.

[24]Id.

[25]Id., p. 47 (Mason), p. 115-16 (Trooper Simon Besson).

[26]Id., p. 48 (Mason), p. 116-17 (Besson).

suspected ecstasy or MDMA.[27]  Officers also recovered a box of sandwich bags with a straight razor blade and a digital scale from a drawer near the kitchen cabinets.[28]  Upon questioning after he was read his rights, Clay told the officers that the drugs were his and that his girlfriend and brother, who was also in the house, had nothing to do with it.[29]  He repeated this statement when the officers moved him to the bedroom.[30]

The jury heard this evidence through the testimony of the officers, who indicated that Clay admitted ownership of the drugs found in the house.  Under Louisiana law, this confession was sufficient for the jury to find Clay culpable.  State v. Carter, 521 So.2d 553, 555 (La. App. 1st Cir. 1988); see State v. Frith, 985 So.2d 792, 799 (La. App. 5th Cir. 2008) (defendant's admission to officers that he owned weapon and cocaine, when considered with other circumstantial evidence, was sufficient to support conviction for possession).  In addition to this admission, Clay told the investigating officer that he brought the cocaine with him from Houma, Louisiana, tending to show his dominion and control, or at least the attempt to do so.  The testimony further established that the drugs were found in the bedroom a few feet from and within arm's reach of Clay's side of the

---

[27]Id., pp. 51-52 (Mason), p. 120 (Besson).

[28]Id., p. 58, 61 (Mason), p. 130-31 (Lieutenant Chet Caillouet).

[29]Id., p. 73 (Mason); pp. 150, 168 (Lieutenant Josh Champagne).

[30]Id., pp. 150, 168 (Champagne).

bed.  The jury also heard testimony about drug paraphernalia, the quantity of MDMA and the seized cocaine.

This evidence was more than sufficient for a reasonable jury to find beyond a reasonable doubt that Clay was in constructive possession of the cocaine, MDMA and drug paraphernalia seized from the home and that he intended to attempt to distribute the cocaine he brought in from Houma.  See State v. Barthe, 806 So.2d 53, 58 (La. App. 4th Cir. 2001) (evidence was sufficient to support verdict where defendant admitted to officers that the cocaine belonged to him, the cocaine and paraphernalia were located in a closet in his residence, where he told them it would be).

Clay has not established that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief on these two related claims.

VI.    QUANTITY AND CUSTODY OF EVIDENCE (CLAIM NO. THREE)

Clay alleges that the State changed evidence custodians, which prevented him from pursuing questions about the drug evidence.  Specifically, he argues that, at trial, it was discovered that a large amount of the cocaine evidence was missing, making it impossible for the jury to determine the true amount of the drugs or his intent.[31]

---

[31]Rec. Doc. No. 1, p. 9.

Clay asserted these arguments in the state trial court in his application for post-conviction relief.  The court found that the evidence was sufficient to establish that the seized narcotics were the same as those tested and presented at trial.  This was the last reasoned decision on the issue.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Clay argues that the tangible evidence and testimony about it from Deputy Bridget Degravelles was inadmissible under Louisiana law because the chain of custody was broken or not proven by the State.  His claim is not cognizable on federal habeas review.  See Swarthout, 131 S. Ct. at 861 (federal habeas review does not lie for errors of state law).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Estelle, 502 U.S. at 67-68; Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee.  Burgett v. Texas, 389 U.S. 109 (1967).

Federal courts do not review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal

23

proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S.

219, 236-37 (1941); Brown v. Dretke, 419 F.3d 365, 376 (5th Cir.2005) (habeas relief

can be based on an erroneous state court evidentiary ruling only if the ruling violates a

specific constitutional right or is so egregious that it renders the state trial fundamentally

unfair.)  The question of fundamental fairness under the Due Process Clause presents a

mixed question of law and fact.  Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000).

Under the applicable standard of review, this court therefore must determine if the state

court's decision is contrary to or involved an unreasonable application of Supreme Court

precedent prohibiting an unfair trial.

As an initial matter, Clay has failed to establish any error by the state trial court

that would trigger review under the due process standards set forth above.  Robinson v.

Whitley, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial

court, there can be fundamental unfairness); Neal v. Cain, 141 F.3d 207, 214 (5th Cir.

1998).  According to the Louisiana Supreme Court, state law does not require proof of

a perfect chain of custody for evidence to be admissible:

> In order to introduce demonstrative evidence, it suffices if the foundation
> laid establishes that it is more probable than not that the object is the one
> connected with the case; the lack of positive identification or a defect in the
> chain of custody goes to the weight of the evidence rather than to its
> admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982); see also Parker v. Cain, 445 F. Supp.2d 685, 706 (E.D. La. 2006) (Duval, J.).

In Louisiana, "[t]he law does not require that the evidence as to custody eliminate all possibilities that the object has been altered."  State v. Hansbro,  796 So.2d 185, 198 (La. App. 2nd Cir. 2001); State v. Ferguson, 54 So.3d 152, 170-71 (La. App. 4th Cir. 2010).  Louisiana jurisprudence requires that "an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial."  State v. Collins, 998 So.2d 765, 775 (La. App. 2nd Cir. 2008); see also, La. Code Ev. art. 901.  "Ultimately, a chain of custody is a factual matter for the jury."  State v. Parks, 871 So.2d 1015, 1028-29 (La. App. 5th Cir. 2008); Parker, 445 F. Supp.2d at 706.

The United States Fifth Circuit has reached the same conclusion in considering claims related to the chain of custody on habeas review:

> As we have explained, "[i]n cases where the defendant questions whether the evidence offered is the same as the items actually seized, the role of the district court is to determine whether the government has made a prima facie showing of authenticity." A "break in the chain of custody simply goes to the weight of the evidence, not its admissibility."

Shields v. Dretke, 122 F. App'x 133, 150 (5th Cir. 2005) (citations omitted).

The jury in Clay's criminal case heard the testimony of the investigating officers who identified the evidence seized from Merrill's house and the original packaging in

which it was found.[32]   Agent Robert Mason also testified that the cocaine had been

repackaged by the state police crime lab after it was tested and measured.[33]   He also

explained that the normal procedure is for crime lab personnel to remove the narcotics

from the original plastic baggies to test it chemically.[34]   He showed how the cocaine

cookies had been broken in the testing process and as a result of time.[35]   The same was

true of the seized MDMA tablets, at least one of which had a piece broken off for

testing.[36]

Agent Mason also identified the stickers used in the crime lab to memorialize the

processing.[37] He identified and described the evidence envelope he used to secure and

identify the narcotics and the separate master control form used to track the chain of

custody for every piece of evidence seized in the case.[38]   This form identified article one

---

[32]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 53, 55 (Mason), pp. 116-17 (Besson), 9/29/09.

[33]Id., p. 53.

[34]Id.

[35]Id.

[36]Id., p. 54.

[37]Id., p. 55.

[38]Id., pp. 62, 63-64.

as brown paper bag containing baggies of suspected cocaine with a gross weight of 86.3 grams, which was submitted to the crime lab for testing.[39]

On cross-examination, defense counsel questioned Agent Mason about the disparity between his notation that the cocaine weighed 86.3 grams when seized and the crime lab finding of only 51.6 grams of cocaine.[40]  Mason explained with great clarity that, at the scene, he weighed the brown paper bag, which contained several baggies containing the cocaine cookies.[41]  The total weight of the packaging (the paper bag and baggies) and the narcotics was 86.3 grams at the scene.  He further explained that the crime lab, on the other hand, removed the cocaine cookies from all packaging and weighed just the cocaine itself on a scale.[42]  He testified that this accounted for the difference between the gross weight he recorded and the net weight recorded in the crime lab.

The jury also heard the testimony of Deputy Degravelles, the evidence clerk at the Lafourche Parish Sheriff's Office.[43]  She testified that she was charged with maintaining the security and integrity of evidence and evidence records for the sheriff's office,

---

[39]Id., pp. 64, 65.

[40]Id., pp. 100-02.

[41]Id., pp. 102, 103.

[42]Id., p. 102.

[43]Id., p. 185.

including the transport of evidence for testing to the Louisiana State Police Crime Lab in Baton Rouge.[44]  She identified the evidence maintained in Clay's case by using the master control form and the other tags coordinated on each article identified on the form.[45]  She explained that the integrity of the original evidence is assured by placing each article into a heat sealed bag with the matching evidence tags.[46]  For example, article one on her list was the brown paper bag containing plastic baggies with cocaine inside weighing 86.3 gross grams.  When turned over to the evidence room, these items would have been placed together into one heat-sealed bag and tagged.[47]  The items remained together until they were separated for examination by the state crime lab.[48]  The crime lab personnel repackaged each item for return to the evidence office.

On cross-examination, the deputy testified that she was not the evidence custodian in 2006 when the evidence was originally received, and she was not the custodian in

---

[44]Id.

[45]Id., pp. 187-88.

[46]Id., p. 188.

[47]Id., pp. 188-89.

[48]Id., p. 189.

2006 when it was delivered to the crime lab.[49]  She testified, however, that she was the person who released the evidence to the prosecutor that morning for trial.[50]

Contrary to Clay's suggestion, the testimony and evidence tended to prove that the evidence presented at trial was in fact the evidence seized from Merrill's house and established the flow of evidence through testing and return to the sheriff's office.  The testimony identified the evidence, its packaging and the connexity with his case.  The fact that the sheriff's office changed personnel between 2006 and trial in 2009 was of no moment.  The tags and evidence forms were consistent and accounted for each article and item.  With these facts in evidence, the jury was entitled to assess the weight of the testimony and assign credibility to the evidence and the custodial chain.

The testimony was also sufficient for the jury to determine the actual amount of the cocaine.  Agent Mason's testimony provided a clear explanation for the difference in the gram weight of the packaged cocaine he logged and the weight of the cocaine without packaging reported by the crime lab.  The jury was provided with the crime lab report and confirming testimony that the actual amount or weight of the cocaine alone was 51.6 grams.

---

[49]Id., p. 200.

[50]Id., pp. 189-90.

In addition, the jury heard the testimony of Louisiana State Trooper Craig Rhodes as an expert in field level narcotics.[51]  He stated that the actual amount of narcotics seized in this case in his experience was not for personal use.  His experience showed that arrestees possessing cocaine for personal use would have about $40 worth or two rocks of cocaine.  He indicated that a rock weighs about 1/5 to 1/4 of one gram, which was significantly less than the amount that was seized in Clay's case.[52]

The record does not support Clay's argument that the chain of custody was tainted or broken or that the evidence was insufficient for the jury to reach a determination of the amount of cocaine at issue.  The evidence, including evidence of the amount of cocaine, was more than sufficient for a reasonable jury to have reached the verdict under the standards set forth in Jackson v. Virginia, discussed previously.

Clay has not established any evidentiary error or that he was denied the ability to challenge the custody of the evidence.  He has not established that he was denied due process or that his trial was rendered fundamentally unfair.  The state courts' denial of relief on this claim was not contrary to Supreme Court law requiring fundamental fairness or sufficient evidence.  Clay is not entitled to relief on this claim.

---

[51]Id., p. 213.

[52]Id., pp. 214, 216, 220, 222-23.

VII.   <u>STATE'S USE OF KEL TAPE</u>

Clay alleges that the introduction of a Kel tape at trial violated the rules of open

file discovery and violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  He argues that the

State represented in pretrial proceedings that the Kel tape was inaudible and could not

be used.  At trial, however, the State introduced the tape and played it for the jury.  Clay

also contends that the tape was never turned over to the defense in discovery, because the

State had declared it to be inaudible.

Clay raised this claim in his state application for post-conviction relief.  The state

trial court denied the claim as meritless, finding that the defense was made aware of the

tapes during pretrial motion hearings.  In addition, the court found that, to whatever

extent the tapes contained <u>Brady</u> information, the jury heard the exculpatory evidence

when the tapes were played at trial.  This was the last reasoned decision on the issue.

<u>Ylst</u>, 501 U.S. at 802.

Clay first argues that the State violated the rules of open-file discovery.  Again,

this court's review is limited to questions of constitutional dimension, and does not

extend to mere state procedural law violations. <u>Estelle</u>, 502 U.S. at 67-68; <u>Gonzales</u>, 643

F.3d at 429; <u>Jernigan</u>, 980 F.2d at 298.  The United States Supreme Court has held that

"[t]here is no general constitutional right to discovery in a criminal case."  <u>Weatherford</u>

<u>v. Bursey</u>, 429 U.S. 545, 559 (1977).  Clay has attempted to recast the claim as a federal

31

constitutional issue under <u>Brady</u>.  As discussed below, Clay's effort is unavailing.  As determined by the state courts, the Kel tape was not withheld, exculpatory or used to impeach Clay in any way that may have invoked <u>Brady</u> protections.

In <u>Brady</u>, the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87; <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869-70 (2006).  This rule extends to evidence used as impeachment evidence against the accused.  <u>Connick v. Thompson</u>, __U.S.__, 131 S. Ct. 1350, 1381 (2011) (citing <u>Giglio v. United States</u>, 405 U.S. 150 (1972)).  Three factors must be considered to evaluate an alleged <u>Brady</u> violation: (1) The evidence at issue must be material, in that it is favorable to the accused, either because it is exculpatory or because it is impeaching. (2) The evidence must have been suppressed by the State, either willfully or inadvertently. (3) Prejudice must have resulted from the suppression.  <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004) (<u>quoting</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)); <u>DiLosa v. Cain</u>, 279 F.3d 259, 262 (5th Cir. 2002) (citing <u>United States v. Bagley</u>, 473 U.S. 667, 674-76 (1985)); <u>Matthew v. Johnson</u>, 201 F.3d 353, 360 (5th Cir. 2000) (citing <u>Brady</u>, 373 U.S. at 87).

32

Brady claims include "'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.'" Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)) (emphasis added). However, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim." United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980). Brady does not place any burden on the prosecution to conduct a defendant's investigation or assist in presentation of the defense. United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997) (the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence); Bigby v. Cockrell, 340 F.3d 259, 279 (5th Cir. 2003); Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002).

A Brady issue is a mixed question of law and fact. Cobb v. Thaler, 682 F.3d 364, 377 (5th Cir. 2012). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Brady.

In Clay's case, the record supports the state courts' findings that the Kel tape was not withheld from the defense. The record reflects that, over the relevance objection of the prosecutor, Clay's counsel questioned Agent Mason and other state witnesses about

the events leading up to the securing and execution of the search warrant for Merrill's house.[53]  Clay's counsel indicated that his goal was to raise credibility questions in and through Mason's testimony compared to the search warrant affidavit and the confidential informant's testimony.[54]

The testimony showed that the Lafourche Parish task force conducted an investigation into drug activity by a man named Tyeine Jones, which was being conducted out of Merrill's house.[55]  Using the informant, the officers attempted to purchase drugs from Jones at the house.[56]  Although the drug deal ultimately was unsuccessful, the audio of the attempted transaction was recorded by the officers using the Kel recording equipment.[57]  This was used to support Agent Mason's affidavit to obtain the search warrant for Merrill's house.  The testimony confirmed that Clay was not a subject of or suspect in that investigation.

---

[53]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 76-84, 9/29/09; St. Rec. Vol. 6 of 6, Trial Transcript, p. 87 et seq. (Mason), 9/30/09.

[54]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 78-82, 9/29/09.

[55]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 76-77, 85, 93 (Mason), 9/29/09.

[56]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 76-77 (Mason), 9/30/09. St. Rec. Vol. 6 of 6, Trial Transcript, pp. 88, 96 (Mason), 9/30/09.

[57]See, e.g., St. Rec. Vol. 6 of 6, Trial Transcript, pp. 105-107 (Mason), 9/30/09.

Much of this testimony was presented by Agent Mason when he was recalled by Clay's defense counsel during the defense case.[58]  Again, defense counsel made clear to the state trial court that his questioning was focused on challenging Agent Mason's credibility, to bring out possible conflicts between his affidavit and both his prior and Cheramie's testimony.  During his subsequent questioning of Mason, the prosecutor focused on the transcript of the Kel tape.  Clay's counsel objected, indicating that he had not previously seen the tape.[59]

The prosecutor reminded the court that the tape had been played at a pretrial hearing on a motion to quash challenging the search warrant and that the defense was at that time placed on notice that it was in evidence in Tyeine Jones's case.[60]  Clay's counsel argued that he was not enrolled when the tape was played at the pretrial hearing and that the tape was not in the prosecutor's file during open file discovery.[61]  Defense counsel eventually conceded to the court that he knew about the tape because it was

---

[58]Pages 97 through 104 of Agent Mason's testimony are missing from the trial transcript of September 30, 2009 contained in St. Rec. Vol. 6 of 6. The record nevertheless is sufficient for the Court to address this issue.

[59]Id., p. 108.

[60]Id., pp. 108-114.

[61]Id.

thoroughly discussed at other pretrial motion hearings at which he was present.[62] Counsel also knew that the tape was part of the evidence in Jones's case, but he did not pursue a copy of it.[63]

The state trial court ruled that the defense was aware that the Kel tape existed, knew that the tape was contained in the evidence in Jones's case, and made no effort to obtain it.[64] The court then allowed the State to use the tape at trial for purposes of rehabilitating Agent Mason's credibility.

The record therefore confirms that the existence of the Kel tape was not hidden from the defense and was available to the defense before trial.  In addition, Clay has made no showing to the state courts or to this court that the content of the conversation on the Kel tape was materially favorable to him.  The tape was presented only to assure the accuracy of the information Agent Mason included in his affidavit used to secure the search warrant of Merrill's house.  The testimony established that the investigation was directed at Jones, not Clay.  Furthermore, as noted by the state trial court, the tape was played for the jury.  Thus, if any exculpatory information was contained in the tape, the jury heard and considered it at trial.

---

[62]Id., p. 111.

[63]Id., pp. 112, 114.

[64]Id., pp. 114-15, 116

36

Under these circumstances, the record does not reflect that a <u>Brady</u> violation occurred.  <u>Perry v. Quarterman</u>, 314 F. App'x 663, 669 (5th Cir. 2009) ("This court has held that 'evidence is not "suppressed" if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence.'") (quoting <u>Rector</u>, 120 F.3d at 560).  For these reasons, the state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  Clay is not entitled to relief on this issue.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Clifton L. Clay's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[65]

New Orleans, Louisiana, this ___22nd___ day of March, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[65]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.